IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ELMER BURPEE YARLOTT, II,<br><br>Defendant. | CR 20–60–BLG–DLC<br><br><br><br>ORDER |

After two continuances, trial in this case is set for November 12, 2020. (Docs. 21, 25.) Pursuant to Federal Rule of Evidence 413(b), the government timely notified Defendant Elmer Burpee Yarlott, II and the Court of its intent to offer evidence that Yarlott committed a prior sexual assault. (Docs. 17, 18.) The parties acknowledge that a pretrial determination on the proffered Rule 413 evidence would be made without the benefit of other "testimonies . . . offered at trial[,]" *United States v. LeMay*, 260 F.3d 1018, 1029 (9th Cir. 2001), but they nevertheless move the Court for a preliminary ruling on its admissibility. (Doc. 30.)

Although the parties do not characterize it as such, the Court construes the government's Unopposed Notice and Request for a Preliminary Ruling Re: Admissibility of Rule 413 Evidence (Doc. 30) as a motion *in limine*. "[*I*]*n limine*

rulings are not binding on the trial judge, and the judge may always change his mind during the course of trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). So, while the Court is inclined to admit the government's proffer, as explained herein, it cautions the parties that it could change course after hearing all the evidence.

## BACKGROUND

A Grand Jury charged Yarlott by indictment with aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153(a) and 2241(a)(2). (*Sealed* Doc. 1.) Specifically, the Indictment alleges that Yarlott, an Indian person, "knowingly caused Jane Doe to engage in a sexual act by threatening [her] and placing her in fear that she would be subjected to death and serious bodily injury[]" in November 2019. (*Id.*) The alleged crime took place on the Crow Indian Reservation. (*Id.*)

As already indicated, the government intends to introduce evidence that Yarlott committed another sexual assault in 2008.[1] (Doc. 17.) To support its proffer, the United States argues that the circumstances of the 2008 assault closely mirror the circumstances of the crime alleged in the Indictment. (Doc. 18 at 5–6.) Yarlott urges the Court to exclude the evidence by emphasizing the eleven-year gap between the 2008 event and the instant offense. (Doc. 23 at 3–4.) And

---

[1] The government indicates that it will introduce the prior act evidence through the 2008 complaining witness' testimony. (Doc. 17.)

pointing to smaller—but distinct—features of each assault, he attempts to undercut their broad similarities. (*Id.*)

The Court planned to decide the question at trial after it heard all the other evidence. However, good reasons support the parties' joint request that the Court issue a preliminary ruling. The government explains that if the Court rules to exclude the evidence, it will move to quash the outstanding writ of habeas corpus (ad testificandum) (Doc. 28), and then decide whether to continue to prosecute the case. (Doc. 30 at 3.) For his part, Yarlott represents that if the Court overrules his objection to the prior act evidence, he "will likely resolve this case by plea rather than trial." (*Id.*) Thus, pursuant to the parties' request, the Court will telegraph the evidentiary ruling it is inclined to make based on the papers currently before it.

## ANALYSIS

While the Court's ultimate ruling rests on its balancing probative value against prejudicial harm pursuant to Federal Rule of Evidence 403, the starting place for its analysis is Rule 413(a). *Cf. United States v. Thornhill*, 940 F.3d 1114, 1117 (9th Cir. 2019) (setting out the analytical framework under the analogous Rule 414(a)).

### I.     Rule 413

Because it aids the Court's Rule 403 balancing, the Court begins its Rule 413 analysis by recalling the legislative purpose of the rule. Then, although the

parties appear to concede the point, the Court explains why the proffered evidence falls within Rule 413's scope.

### A. Legislative History

Offspring of the Violent Crime Control and Law Enforcement Act of 1994, Rule 413 and its sisters at Rules 414 and 415 "supersede [] Rule 404(b)'s restriction" against propensity evidence.  *United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir. 2004) (citations omitted) (alteration in original); *see also* Fed. R. Evid. 404(b)(1).  Indeed, they "establish[ed] a presumption . . . *favoring* the admission of propensity evidence at . . . trials involving charges of sexual misconduct."  *Id.* (citations omitted) (emphasis added).  For this, the triad of rules drew—and continues to draw—harsh criticism as "represent[ing] a breach in a bedrock principle of evidence law that is closely connected to a version of our idea of due process."  Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:83 (4th ed.).  For some, that is, Rules 413–415 run contrary to the proposition that "[c]riminal defendants are not to be judged on the basis of their character, but on the basis of proof that they committed a particular misdeed, as shown by evidence peculiar to the facts at hand."  *Id.*

Congressional sponsors specifically countered disapproval to Rule 413 by explaining that "adult-victim sexual assault cases . . . often turn on difficult credibility determinations" where a defendant "contends that the victim engaged in

consensual sex and then falsely accused him." 23 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* Evid. R. 413 (2d ed.) (citing 140 Cong. Rec. H8991–92, Aug. 21, 1994).  Thus, the argument went, propensity evidence is critical in "accurately deciding cases that would otherwise become unresolvable swearing matches."  *Id.*  And by imputing a presumption in favor of admission, Congress intended to put evidence of uncharged sex offenses "on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule."  *Id.*

To that end, Congress contemplated no "arbitrary or artificial restrictions" on the admissibility of Rule 413–415 evidence.  *Id.*  Particularly relevant in this case, it imposed no time limit on the evidence which may be admitted under the trio: "as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time in relation to the charged offense[.]"  *Id.*  On this point, congressional backers highlighted the Ninth Circuit's then-recent decision in *United States v. Hadley*.  *Id.*  There, declining to adopt an "inflexible rule regarding remoteness in the context of Rule 404(b)," the court concluded that the similarity of the ten-year-old prior act to the offense charged "outweigh[ed] concerns regarding its remoteness."  918 F.2d 848, 851 (9th Cir. 1990).

## B.     Rule 413 Applied

So, with Congress' sweeping intent—well-reasoned or not—in mind, the Court turns to the practical application of Rule 413 to this case.  In pertinent part, Rule 413 provides:

> In a criminal case in which the defendant is accused of sexual assault, the court may admit evidence that the defendant committed any other sexual assault.  The evidence may be considered on any matter to which it is relevant.

Fed. R. Evid. 413(a).  Thus, three criteria must be satisfied for the rule to apply: "first the defendant must be accused of an offense of sexual assault[;] second, the prior act must be an offense of sexual assault," *United States v. Rogers*, 587 F.3d 816, 819–20 (7th Cir. 2009); and third, the proffered evidence must be relevant, *Doe by Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000).

Here, neither party disputes that the criteria are satisfied, and the Court agrees.  First, the charge Yarlott faces—aggravated sexual abuse, in violation of 18 U.S.C. § 2241(a)(2)—qualifies as "sexual assault" under Rule 413.  *See* Fed. R. Evid. 413(d)(1) (defining "sexual assault" as a crime under federal law involving any conduct prohibited by 18 U.S.C. chapter 109A).

Second, while it is unclear from the parties' papers whether Yarlott was convicted of the 2008 sexual assault, the Ninth Circuit has rejected the notion "that district courts may *only* introduce prior acts . . . for which a defendant has been

tried and found guilty." *LeMay*, 260 F.3d at 1029 (emphasis in original).[2] Instead, "the admissibility of other act evidence under [Rules 413–415] is governed by Federal Rule of Evidence 104(b), the rule of conditional relevance." *United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005). Thus, if the 2008 act is indeed an offense for which Yarlott was never convicted, the Court must only examine "all the evidence[3] in the case and decide[] whether the jury could reasonably find the conditional fact—[here, that Yarlott sexually assaulted the 2008 complaining witness]—by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988). Because Yarlott fails to argue otherwise, and based on the parties' pretrial representations, the Court concludes that a reasonable jury could find by a preponderance of the evidence that Yarlott sexually assaulted the 2008 complaining witness.

Third and finally, nobody disputes that the government's proffered evidence "is relevant[,] because common sense suggests that someone with a propensity to do something is more likely to do the same thing again[;] [t]he evidence, therefore, makes a fact of consequence more or less likely." *Rogers*, 587 F.3d at 821; *see*

---

[2] In so doing, the court noted "that the extent to which an act has been proved is a factor that district courts may consider in conducting the Rule 403 inquiry." *LeMay*, 260 F.3d at 1029.
[3] In *United States v. Deputee*, a Ninth Circuit panel agreed with United States District Court Judge Susan P. Watters that the complaining witness' testimony "was sufficient, without more, to allow a jury to find by a preponderance of the evidence" that the defendant had abused her. 714 F. App'x 778, 780 (9th Cir. 2018).

Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Therefore, the 2008 sexual assault falls within the scope of Rule 413. However, Rules 413–415 "establish[ed] a presumption—but not a 'blank check'—favoring the admission of propensity evidence at . . . trials involving charges of sexual misconduct." *Sioux*, 362 F.3d at 1244 (citation omitted). Consequently, evidence admissible under Rule 413 remains subject to balancing pursuant to Rule 403. *Cf. Thornhill*, 940 F.3d at 1118.

## II.     Rule 403

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Because "evidence of a defendant's prior sex crimes will always present the possibility of extreme prejudice, . . . district courts must . . . conduct the Rule 403 balancing inquiry in a careful, conscientious manner that allows for meaningful appellate review of their decisions." *LeMay*, 260 F.3d at 1031. To that end, courts in the Ninth Circuit examine the following five factors to determine whether to admit Rule 413 evidence:

> (1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and

>
> (5) the necessity of the evidence beyond the testimonies already offered at trial.

*Id.* at 1028, 1031 (citation and internal quotation marks omitted); *see also Sioux*, 362 F.3d at 1243 (applying the *LeMay* factors to Rule 413 evidence). Additionally, courts may consider "any other[] [factors] that might have relevance in a particular case." *LeMay*, 260 F.3d at 1031.

Before analyzing the *LeMay* factors, however, the Court acknowledges the "inherently prejudicial nature of [propensity] evidence" admissible under Rule 413. *See United States v. Weber*, 793 F. App'x 586, 587 (9th Cir. 2020). However, as already discussed, "Congress has said that in a criminal trial for an offense of sexual assault, it is not improper [for the jury] to draw the inference that the defendant committed this sexual assault because he has a propensity to do so." *Rogers*, 587 F.3d at 822. Therefore, "[b]ecause Rule 413 identifies this propensity inference as proper, the chance that the jury will rely on that inference can no longer be labeled as 'unfair' for purposes of Rule 403 analysis." *Id.* Thus, to exclude evidence based solely on the prejudicial effect of the propensity inference would be "problematic." *Id.* at 823.

This is not to say, though, that evidence falling within Rule 413 is not *per se* non-prejudicial. *Id.* (explaining that propensity evidence may be improper where a jury is likely to convict based on the appalling nature of the prior act, or because they think the defendant is a "bad person" generally deserving of punishment).

Still, "that prior acts evidence is inflammatory is not dispositive in and of itself." *LeMay*, 260 F.3d at 1030. Instead, a district court must "carefully evaluate the potential inflammatory nature of the proffered testimony" and balance it against each factor analyzed below. *Id.*

With these principles of prejudice in mind, the Court takes each *LeMay* factor in turn.

### A. Similarity of the Prior Act to the Act Charged

A prior sexual assault admissible under Rule 413 "need not be identical to [the charged offense] to have substantial probative value." *United States v. Erramilli*, 788 F.3d 723, 729 (7th Cir. 2015). Here, Yarlott concedes that, "in broad strokes," the 2008 sexual assault and the instant alleged assault share substantial similarities. (*See* Doc. 23 at 3.) He is right, and the differences on which he focuses fail to minimize the probative value of the prior sexual assault in any meaningful way.

True, the complaining witness to the 2008 assault apparently knew Yarlott prior to the attack, whereas Yarlott says Jane Doe only entered his vehicle after he offered her money. (Doc. 23 at 3–4.) And, Yarlott apparently drove around with the woman in 2008 before allegedly assaulting her; here, the alleged assault happened shortly after Jane Doe entered Yarlott's vehicle and she spurned his advances. (*Id.*) Additionally, the government does not allege that Yarlott

- 10 -

demanded that the 2008 complaining witness declare her love for him after intercourse, nor that he invoked the specter of the cartel's violence to frighten her into silence. (*Id.* at 4.) Here, the allegation is that Yarlott did both to Jane Doe. (*Id.*)

However, these slight differences pale in comparison to the striking similarities between the two events. In both cases, Yarlott allegedly left drinking establishments with the complaining witness after midnight. (Doc. 18 at 2–3.) Both times, Yarlott purportedly propositioned his target once he had driven her some distance away. (*Id.*) Each time, the complaining witness exited Yarlott's vehicle, but reentered it after either realizing they had driven too far to walk or on Yarlott's direct threat of harm. (*Id.*) Upon reentry, Yarlott allegedly forced vaginal intercourse without either woman's consent. (*Id.*)

In short, both events involve crimes of opportunity in which Yarlott, after encountering women at drinking establishments late at night, invited them into his vehicle, drove them some distance away, asked for sex, and forced them back into his vehicle on direct threat of violence or by driving so far away that no other choice was feasible. The 2008 event suggests Yarlott's propensity to create and capitalize on a situation where a woman's ability to run away is severely compromised. And, the small differences between the two alleged assaults fail to move the comparative needle. *Cf. LeMay*, 260 F.3d at 1028 (finding prior acts of

child molestation "very similar" to charged crimes based on the type of copulation and the power imbalance involved, notwithstanding the defendant's youth during the prior acts and his relative maturity at the time of the charged offenses).

Because the 2008 prior assault is substantially similar to the crime charged, it is highly relevant. *See id.* Thus, the Court finds that the first *LeMay* factor weighs in favor of admission.

### B.   Closeness in Time of the Prior Act to the Act Charged

Without citation, Yarlott baldly asserts that the eleven-year gap between the prior sexual assault and act charged "is too remote to be of probative value." (Doc. 23 at 3.) As a preliminary matter, Yarlott's math ignores the fact that he spent about half of those eleven years in custody. (Doc. 18 at 7 n.1.) The Ninth Circuit recently upheld a district court's evaluation that a ten-year-old prior act was "relatively close in time" to the charged offense, emphasizing that the defendant spent seven years of that decade in prison. *United States v. Hanson*, 936 F.3d 876, 881 n.4 (9th Cir. 2019). During his imprisonment, the court explained, the defendant was "presumably unable" to commit another offense. *Id.* Accordingly, considering Yarlott's six-year stint in custody, the eleven-year gap is not as remote as he characterizes.

And, even without a period of incarceration to close the intervening temporal gap, "[t]here is no bright line rule for precluding evidence that is remote

in time." *Thornhill*, 940 F.3d at 1120.  Indeed, *LeMay* itself instructs that the passage of eleven years does "not render the decision to admit relevant evidence of similar prior acts an abuse of discretion."  260 F.3d at 1028–29.  Furthermore, the Ninth Circuit has affirmed that even twenty-year periods are not too remote. *United States v. Stern*, 391 F. App'x 621, 622 (9th Cir. 2010).[4]  Similarly, understanding that Congress meant the temporal scope of Rules 413–415 to be broad, other circuits have taken a liberal approach to the question of staleness.  *See, e.g., United States v. Meacham*, 115 F.3d 1488, 1492–95 (10th Cir. 1997) (affirming admission of 30-year-old prior act); *United States v. Larson*, 112 F.3d 600 (2d Cir. 1997) (admission of testimony covering events 16–20 years prior to trial not an abuse of discretion).

Thus, considering courts' universal reluctance to say how old is too old, and based on Yarlott's tenure in custody during the intervening period, the Court weighs this factor in favor of admission.  Only about five free years stood between the prior act and the charged offense—events that, as discussed already, bear striking similarities.  *See Thornhill*, 940 F.3d at 1120 (stating that, "given the

---

[4] Judge Paez dissented from the *Stern* panel's memorandum disposition, in part because he took umbrage with its finding on this *LeMay* factor.  He explained that, while "courts have sometimes upheld admission of Rule 414 evidence of acts far in the past, the defendant in those cases had been an adult at the time of the prior abuse." *Stern*, 391 F. App'x at 623 (Paez, J., dissenting) (collecting cases).  Stern, in contrast, had been between 11 and 13 years old when the prior abuse occurred, and was an adult at the time of the alleged offense.  *Id.* at 622.  Judge Paez's concerns are inapplicable to this case, as there is no indication that Yarlott was a minor in 2008.

caselaw," the district court would have been within its prerogative to find this factor in favor of the government where ten years stood between the prior act and the charged offense); *see also Hadley*, 918 F.2d at 851 (finding that the similarity of the ten-year-old prior act to the offense charged outweighed concerns regarding remoteness).

### C.    Frequency of the Prior Act

The government concedes that the third *LeMay* factor weighs in Yarlott's favor, as the prior act constitutes "a single act of sexual misconduct." (Doc. 18 at 7.) Thus, the Court weighs this factor against admission. *See United States v. Birdsbill*, 97 F. App'x 721, 723 n.2 (explaining that *LeMay*'s interpretation of frequency concerns "the number of prior acts the defendant committed regardless of the victim's identity").

### D.    Presence or Lack of Intervening Circumstances

Yarlott contends that the "significant" lapse of time between the instant offense and the 2008 sexual assault constitutes an intervening circumstance that should weigh against admission. (Doc. 23 at 4.) However, the Ninth Circuit rejected a similar argument in *Stern*, concluding that "the fact that [the defendant] engaged in unlawful sexual acts . . . as a teenager . . . and then again as an adult, [does not] suggest that the passage of time constitutes an intervening circumstance that favors him under the fourth factor." 391 F. App'x at 622. Thus, and because

doing otherwise would result in contradictory conclusions on the second and fourth factors, the Court rejects this argument.

In contrast, the government properly points to the years during the intervening period that Yarlott spent in custody as weighing in favor of admission. (Doc. 18 at 7.) Noting that the second, third, and fourth *Lemay* factors may be "inseverably linked and [therefore] must be analyzed together[,]" the Ninth Circuit has considered intervening periods of incarceration as appropriate fodder under this factor. *See, e.g., United States v. Charles*, 691 F. App'x 367, 370 (9th Cir. 2017). Again, the circumstance of incarceration is relevant because the defendant is presumably unable to continue a pattern of criminal behavior while he sits in jail. *Hanson*, 936 F.3d at 881 n.4.

Therefore, in view of the intervening years that Yarlott spent in custody, the Court weighs this factor in favor of admission.

### E. Necessity of the Prior Act Evidence[5]

"Prior acts evidence need not be *absolutely necessary* to the prosecutor's case in order to be introduced; it must simply be helpful or *practically necessary*." *LeMay*, 260 F.3d at 1029 (emphasis in original). In this case, it seems likely that

---

[5] It bears repeating here that the Court's pretrial ruling is preliminary and subject to change at trial. This last *LeMay* factor explicitly illustrates why: district courts should consider the necessity of the proffer in light of the "testimonies *already offered at trial*." 260 F.3d at 1031 (emphasis added).

- 15 -

Yarlott will attack the credibility of Jane Doe and capitalize on the lack of eyewitness and expert testimony.[6] Specifically, Yarlott appears to be laying the groundwork to argue that Jane Doe agreed to have sex with him in exchange for money. (*See* Doc. 23 at 4.) Therefore, evidence of the 2008 event is "necessary"—even if the prosecutor could possibly obtain a conviction without it—because it serves to bolster Jane Doe's credibility in the face of charges that she consented to a financial exchange that she now regrets. *Cf. LeMay*, 260 F.3d at 1029. As the government points out, this is exactly the type of "swearing match" Congress sought to resolve by enacting Rule 413. *See* 140 Cong. Rec. H8991–92, Aug. 21, 1994.

Furthermore, as was the case in *LeMay*, testimony about the 2008 act is necessary to establish that it was very similar, and thus relevant, to the charged offense. *Id.* In other words, the Court is likely to reject any argument from Yarlott that the 2008 complainant's testimony should be limited to the *fact* of the act. Here, like *LeMay*, "the relevance of the prior act [is] in the details." *Id.* And, establishing the simple fact of the 2008 event would fail to "fill in the details that made the prior [sexual assault] relevant." *Id.* at 1030.

---

[6] Yarlott does not dispute the government's prediction about his primary defense. (*See* Doc. 23 at 4–5.)

Therefore, because it will serve to corroborate Jane Doe's testimony—where Yarlott's primary defense will likely be to attack her credibility and imply some sex-for-money transaction—evidence of the 2008 act is "necessary" within *LeMay*'s meaning. The Court is likely to weigh this final factor in favor of admission.

## III. Minimizing the Risk of Unfair Prejudice

Because the Court is inclined to weigh four of the five *LeMay* factors in favor admitting the prior act evidence, it is compelled to indicate the procedural safeguards it will likely impose at trial to prevent any unfair prejudice.

First, the Court will admonish the government to "limit its presentation to evidence that is necessary to convey the essential facts underlying the [] prior offense[] and limit the emotional testimony from the prior victim." *See Erramilli*, 788 F.3d at 730 (internal quotation marks omitted). Second, the Court will likely give the jury something in the ilk of the following limiting instruction before the prosecution presents its Rule 413 evidence:

> You are going to hear testimony from this witness and this testimony has a limited purpose. The limited purpose is [that] it may bear on the credibility of witnesses from whom you have already heard testimony. The evidence you are about to hear is not evidence of guilt in this case of the defendant, per se, it is evidence that can be considered by you for any purpose to which it is relevant in terms of the issues in this case.

*LeMay*, 260 F.3d at 1023–24. Third, after both sides rest, the Court probably will remind the jury that Yarlott is "on trial for the acts charged in the [I]ndictment, and

- 17 -

not for the [2008 sexual assault]." *Id.* at 1024. And fourth, the Court will almost certainly give a final limiting instruction to the jury, again reminding it that Yarlott "is not on trial for any conduct or offense that is not charged in the [I]ndictment. [The jury] should consider any evidence about other acts of the defendant that [it] ha[s] heard . . . only as those acts may bear on the matter that is relevant in this case." *Id.*

## ORDER

For the foregoing reasons, IT IS ORDERED, *in limine*, that: (1) the evidence of the prior act is admissible under Rule 413; and (2) because it weighs four of the five *LeMay* factors in favor of admission pursuant to Rule 403, the Court is inclined to admit the prior act evidence at trial.

DATED this 2nd day of November, 2020.

/s/ Dana L. Christensen
Dana L. Christensen, District Judge
United States District Court